UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| QUEENSGATE ASSOCIATES, LLC ) | |
| ) | |
| v. ) | NO. 3:05-0815 |
| ) | JUDGE CAMPBELL |
| REGAL CINEMAS, INC. ) | Bankruptcy Case No. 3:01-11305 |

MEMORANDUM

This is an appeal (Docket No. 1, Ex. 3 and Bankr. Docket No. 2142) from the Bankruptcy Court's Order (Docket No. 1, Ex. 4 and Bankr. Docket No. 2140) and Memorandum Opinion (Docket No. 1, Ex. 5 and Bankr. Docket No. 2141) entered on July 25, 2005 sustaining Regal Cinemas, Inc.'s ("Regal") objection to Queensgate Associates, LLC's claim ("Queensgate") for restoration damages. For the reasons stated herein, the decision of the Bankruptcy Court is AFFIRMED.

The fundamental issues on appeal are whether the Bankruptcy Court correctly determined that Queensgate failed to give Regal adequate notice of its claim for restoration damages and whether the statutory cap of 11 U.S.C. §502(b)(6) applies to Queensgate's claim for restoration damages.

The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. §158(a). The standard of review is de novo for questions of law. Investors Credit Corp. v. Batey (In re: Batey), 995 F. 2d 85, 88 (6th Cir. 1993). The findings of fact of the Bankruptcy Court are subject to a "clearly erroneous" standard of review. Fed. R. Bankr. P. 8013.

This case involves a dispute over amounts owed by Regal to Queensgate as a result of Regal's rejection, pursuant to 11 U.S.C. §365, of an unexpired movie theater lease, dated November 20, 1989 (the "Lease"), by and between Regal, as lessee, and Queensgate, as lessor,

with respect to property located in Queensgate Shopping Center, York County, Pennsylvania (the "Premises") (Bankr. Docket No. 2129, 1 Volume of Exhibits/Transcripts, Ex. 1).

The record reveals that on October 11, 2001, Regal filed a voluntary petition for protection under Chapter 11 of Title 11, United States Code in the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court"), and filed a Motion Pursuant to 11 U.S.C. §§365(a) and 554 Authorizing the Debtor's Rejection of Certain Unexpired Nonresidential Real Property Leases and Abandonment of Certain Property (Docket No. 1, Ex. 19, Bankr. Docket No. 23). An order was entered by the Bankruptcy Court authorizing Regal's rejection the Lease as of November 30, 2001 (Bankr. Docket Nos. 256 and 2129, 1 Volume of Exhibits/Transcripts, Ex. 3). Prior to entry of the order authorizing rejection of the Lease, Queensgate filed a claim against Regal in the amount of $1,811,811.42 (the "Claim") (Bankr. Docket Nos. 1889 at 17 and 2129, 1 Volume of Exhibits/Transcripts, Ex. 4). The Claim represented fifteen percent (15%) of the rent reserved under the Lease ($587,236.80), pre-petition arrearages for CAM charges and taxes ($34,644.62), and damages to premises ($1,190,000.00) (Bankr. Docket Nos. 1889 at 17 and 2129, 1 Volume of Exhibits/Transcripts, Ex. 4).

On February 26, 2002, Regal objected to the Claim to the extent that it exceeded the §502(b)(6) damage cap of $621,573.44 (Bankr. Docket No. 2129, 1 Volume of Exhibits/Transcripts, Ex. 5). On April 3, 2002, Queensgate responded to Regal's objection, and subsequently cross motions for summary judgment were filed by the parties (Bankr. Docket No. 2129, 1 Volume of Exhibits/Transcripts, Ex. 6; Case No. 3:03-1185, Docket No. 13 at pp. 2-3). Following argument on the cross motions for summary judgment, the parties entered into and

2

filed with the Bankruptcy Court a stipulation for payment of the undisputed portion of the Claim (the "Stipulation") (Case No. 3:03-1185, Docket No. 13 at pp. 2-3, Docket No. 1, Ex. 7)). The Stipulation provided for the payment of $621,573.44 to Queensgate, which the parties agreed Queensgate was entitled to pursuant to 11 U.S.C. §502(b)(6). $1,190,237.98 of the claim remained in dispute, which amount Queensgate claimed for work to the Premises and not pursuant to 11 U.S.C. §502(b)(6) (Case No. 3:03-1185, Docket No. 13 at pp. 2-3, Docket No. 1, Ex. 7).

The Bankruptcy Court found that the statutory cap set forth in 11 U.S.C. §502(b)(6) applies to all claims a lessor may have for any breach of a lease or covenant of a lease, including claims unrelated to the termination of the Lease, such as for building repair and maintenance, and disallowed the balance of Queensgate's claim (Bankr. Docket No. 1889 at 9, 1890, and 2129, 1 Volume of Exhibits/Transcripts, Ex. 7 & 8). Queensgate appealed and this Court reversed the decision of the Bankruptcy Court and held that the statutory cap of 11 U.S.C. §502(b)(6) does not apply to a landlord's claim for damages unrelated to the lease termination (Case No. 3:03-1185, Docket Nos. 12 and 13).

After remand, the Bankruptcy Court heard Regal's renewed motion for summary judgment and Queensgate's motion for entry of final judgment, both of which were denied (Docket No. 1, Ex. 4 and 5). The Bankruptcy Court then set the matter for trial and found that the statutory cap of 11 U.S.C. §502(b)(6) applies to Queensgate's claim for damages. In so doing, the Bankruptcy Court found that Queensgate's claim for damages had been re-characterized quite differently from when the Bankruptcy Court and this Court considered allowance of Queensgate's claim. More specifically, the Bankruptcy Court found that Queensgate's claim for

3

damages had changed from an asserted claim for damages to theater seats, built-in projection equipment, walls, and other equipment, to an asserted claim to have the floor of the Premises leveled and restored to a condition suitable for use by traditional, non-theater, commercial tenants to which the statutory cap of 11 U.S.C. §502(b)(6) applies (Docket No. 1, Ex. 5 at 7-8, 13, Bankr. Docket No. 2140 and 2141). The Bankruptcy Court also concluded that ¶3(G) of the Addendum to Lease, dated November 20, 1989 (the "Addendum") controls the issue of floor leveling, and that Queensgate failed to give notice of its desire to have the floors leveled as provided in ¶3(G) of the Addendum (Docket No. 1, Ex. 5 at 10-11, Bankr. Docket No. 2140 and 2141).

## ANALYSIS

On appeal, Queensgate asserts that the Bankruptcy Court erred in concluding that its claim for restoration was barred due to a failure to provide notice as provided by ¶3(G) of the Addendum. To support its assertion, Queensgate argues that its proof of claim provided Regal with all the notice to which Regal was entitled to under ¶3(G) of the Addendum. More specifically, Queensgate argues that its proof of claim was filed within 6 months of the termination of the Lease in accordance with the express instructions of the Bankruptcy Court's Rejection Order and gave Regal notice that Queensgate was seeking to enforce its obligation under ¶3(G) of the Addendum. In addition, Queensgate argues that its response to Regal's objection to its claim provided further timely notice of its restoration claim under the Lease in that Queensgate's response contained an attachment that outlined a cost estimate for re-establishing a 4" concrete slab at the original finished floor elevation. Queensgate alternatively argues that the automatic stay precluded Queensgate from providing notice of its restoration

4

claim as provided by the Lease.  Furthermore, Queensgate argues that Regal's rejection of the Lease excused Queensgate's performance under the Lease.  Finally, Queensgate asserts that Regal waived its right to assert any objection to Queensgate's claim other than its §502(b)(6) objection.

¶3(G) of the Addendum provides:

> Upon the expiration of the Lease Term or the Renewal Terms (or upon any earlier termination of the Lease), the Tenant shall, at the option of Landlord, restore the floor of the Leased Premises to the condition of same as of the date of the Lease, including but not limited to, removal of all theater seats, and removal of any elevated or graduated flooring installed to support any theater seats or aisles.  The obligations set forth in this paragraph 3(G) are and shall be unconditionally guaranteed by certain principals of the Tenant in accordance with the Guaranty of even date herewith attached hereto.  Landlord shall give Tenant written notice if Landlord desires Tenant to restore the floor of the Leased premises as hereinabove set forth within six (6) months after any termination of the Lease.

(Bankr. Docket No. 2129, 1 Volume of Exhibit/Transcripts, Ex. 1).

The Court finds that the Bankruptcy Court did not err in holding that Queensgate failed to give Regal proper notice of its restoration claim pursuant to ¶3(G) of the Addendum.  As the Bankruptcy Court correctly noted, Queensgate's proof of claim is simply for lease rejection damages for rent, taxes and common area maintenance charges, pre-bankruptcy arrearages, and damages to the premises (Bankr. Docket Nos. 1889 at 17, and 2129, 1 Volume of Exhibit/Transcripts, Ex. 4).  There is nothing in Queensgate's claim to put Regal on notice of Queensgate's restoration claim under ¶3(G) of the Addendum.  Similarly, Queensgate's Response to Regal's objection to its claim characterizes the claim as for both "lease rejection damages" and "physical damages to the premises" (Bankr. Docket No. 2129, 1 Volume of Exhibit/Transcripts, Ex. 6).  More specifically, Queensgate's response argues "Regal damaged and destroyed the built in theater seats, the built in projection equipment, walls, other property

5

permanently affixed to the Leasehold Premises, and otherwise caused considerable damage to the Leasehold Premises." (Bankr. Docket No. 2129, 1 Volume of Exhibit/Transcripts, Ex. 6 at 3). There is nothing in this response that alerts Regal to the fact that Queensgate's claim is more properly characterized as a claim for restoration damages. Queensgate's argument that the cost estimate attached to its response provides adequate notice of its restoration claim is not persuasive in light of Queensgate's own characterization of its claim. Furthermore, Queensgate's representations as to the nature of its claim to the Bankruptcy Court and this Court up until the trial of this matter in the Bankruptcy Court as a claim for damages to the Premises and not for restoration pursuant to ¶3(G) of the Addendum provides additional support for Regal's assertions of lack of notice.

The Court also finds Queensgate's argument that it was prohibited by the automatic stay from giving Regal formal notice of its restoration claim unpersuasive. See, LTV Corp. v. Gulf States Steel, Inc. of Alabama, 969 F. 2d 1050, 1058,1059 (D.C. Cir. 1992) (automatic stay did not preclude purchaser from complying with notice requirements under purchase agreement, and purchaser's failure to comply with notice requirements precluded purchaser from recouping costs under indemnity provisions). The automatic stay "is designed to protect the debtor from acts 'that immediately or potentially threaten the debtor's possession of its property...'" Id. (quoting Morgan Guar. Trust Co. v. American Sav. & Loan Ass'n, 804 F. 2d 1487, 1491 (9th Cir. 1986)). "'So long as there is no attempt to obtain possession a notice may be given to alert a debtor lessee of breach of the terms of a lease.'" Id. (quoting In re Sixteen to One Mining Corp., 9 B.R. 636, 638 (Bankr. D. Nev. 1981)).

Furthermore, with respect to Queensgate's argument that Regal's rejection of the Lease

excused Queensgate's performance under the Lease, the Court finds that Queensgate has failed to present sufficient authority to support its argument that Regal's rejection of the Lease excused Queensgate's failure to give written notice of its restoration claim. In fact, the clear language of ¶3(G) of the Addendum requires written notice of a restoration claim "after any termination of the Lease." (emphasis added).

Finally, the Court finds unpersuasive Queensgate's argument that Regal waived the right to assert lack of notice as a basis for objecting to Queensgate's claim because it failed to timely amend its objection to Queensgate's claim to include lack of notice. Given Queensgate's failure to give Regal notice of its claim for restoration damages as provided in ¶3(G) of the Addendum, Queensgate's argument that Regal waived its right to object to Queensgate's restoration claim of which it had no notice is circular and without merit.

Queensgate also argues that the Bankruptcy Court erred in concluding that its claim for restoration damages is limited by 11 U.S.C. §502(B)(6). Given the Court's finding that Queensgate's claim for restoration of the Premises fails because Queensgate failed to give Regal timely notice of its claim as required by ¶3(G) of the Addendum, the Court declines to address at this time whether the statutory cap of 11 U.S.C. §502(b)(6) applies to Queensgate's restoration claim.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE